UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CINDY BRANCH SANZONE**                                     **CIVIL ACTION**

**VERSUS**                                                   **NO. 24-1528**

**COMMISSIONER OF SOCIAL SECURITY**                          **SECTION: KWR**

**ORDER AND REASONS**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Cindy Branch Sanzone's ("Sanzone's") claim for Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for all further proceedings and entry of judgment per the consent of the parties. R. Doc. 11.

**I.    Factual Summary**

Ms. Sanzone filed her claim for disability insurance benefits ("DIB") on March 14, 2022, alleging that she became disabled on January 10, 2022. R. Doc. 9, Tr. 191-197. After her claim was denied initially and on reconsideration, a hearing was held before ALJ Jim Fraiser on March 28, 2024. *Id.*, Tr.74-83. On her alleged onset date, Sanzone was a younger individual, but changed age categories to "closely approaching advanced age" (age 50-54). *Id.* She has a high school education and past relevant work as a mobile home salesperson, account executive, and salesperson of general merchandise. *Id.,* Tr. 24-25. The ALJ denied her claim on April 8, 2024. *Id.,* Tr. 10-27.

The ALJ found that Sanzone met the insured status requirements and had not engaged in substantial gainful activity since January 10, 2022, the alleged onset date. R. Doc. 9, Tr. 12. Findings 1, 2. The ALJ further found that Sanzone has severe impairments including disorders of

the skeletal spine; osteoarthritis; cardiac dysrhythmias; depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; attention deficit-hyperactivity disorder; and trauma and stress related disorders. *Id.,* Finding 3. However, the ALJ held that through the date of last insured, Sanzone did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 19, Tr. 14, Finding 4.

The ALJ found that Sanzone had the residual functional capacity to perform light work, except that she could lift or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours per 8-hour workday, 2 hours at a time; and walk and stand 4 hours per 8-hour. R. Doc. 9 at 21-22, Tr. 16-17, Finding 5. The ALJ also found that Sanzone could occasionally stoop, crouch, and kneel; could not crawl or use ladders; could push or pull 20 pounds occasionally and 10 pounds frequently; and could occasionally reach overhead with the right upper extremity. *Id.*

The ALJ found that Sanzone could understand, remember, and carry out detailed instructions, and that she would be off task 5% of the workday due to concentration, persistence, and pace issues. R. Doc. 9 at 22, Tr. 17, Finding 5. The ALJ also found that Sanzone could adapt to occasional and detailed changes. *Id.* The ALJ found that Sanzone is unable to perform any past relevant work. *Id.* at 29, Tr. 24, Finding 6.

The ALJ found that Sanzone was forty-nine (49) years old on the alleged disability onset date and was therefore defined as a "younger individual", age 18-49, with at least a high school education. R. Doc. 9, Tr. 25, Finding 7 & 8. The ALJ found that Sanzone subsequently changed age category to closely approach advance age. *Id.* According to the ALJ, the transferability of job

2

skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Sanzone is not disabled. *Id.* at 30, Tr. 25, Finding 9.

The ALJ further found that considering Sanzone's age, education, work experience, and residual functional capacity, she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. Doc. 9 at 30, Tr. 25, Finding 10. Therefore, the ALJ found that Sanzone had not been under a disability from January 10, 2022, through the date of the decision on April 08, 20243. *Id.* at 31, Tr. 26-27, Finding 11.

Sanzone now challenges the ALJ's decision. R. Doc. 1. Sanzone contends that the ALJ did not meet his burden of showing that there is other work she can perform considering her limitations, age, education, and prior work experience. R. Doc. 10 at 7. Sanzone contends that the ALJ's denial at Step Five was based on her alleged ability to perform three jobs that require frequent reaching as defined in the *Dictionary of Occupational Titles* ("DOT"). *Id.* at 6. Sanzone contends that her limitation to only occasionally reaching overhead rules out the three identified jobs, and that the ALJ did not resolve the conflict between the vocational expert's testimony and the DOT. *Id.* Sanzone further contends that the vocational expert's vague reference to her past experience was not a sufficient explanation for this conflict. R. Doc. 17 at 1.

In response, the Commissioner contends that there was no conflict between the vocational expert's testimony and the DOT regarding the reaching requirements for these jobs, because the jobs mentioned by the vocational expert might not be identical or as rigorous as those listed in the DOT. R. Doc. 12 at 5. The Commissioner contends that the ALJ properly accepted the vocational expert's testimony, since it was based on her education, training, and experience. *Id.* at 4. The Commissioner further contends that the vocational expert's testimony provided substantial

3

evidence to support the ALJ's finding at Step Five that Sanzone could perform other work and was therefore not disabled. *Id.* at 2. Therefore, the Commissioner contends that the ALJ's decision should be affirmed, and that Sanzone' Complaint should be dismissed. *Id.* at 7.

## II.     Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or

mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *Villa*, 895 F.2d at 1022. The burden of proof is on the claimant for the first four steps but shifts to the Secretary at Step Five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

### III. Analysis

Sanzone contends that the ALJ's opinion is not based on substantial evidence because he did not properly address the conflict between the testimony of the vocational expert (VE) and the DOT before relying on the VE's testimony to deny her claim at Step Five. R. Doc. 10 at 6. Sanzone points out at the ALJ's denial at Step Five was based on her ability to perform the jobs of an officer helper, merchandise marker, and mail clerk, despite the combined effect of her

impairments that include a limitation to only occasional overhead reaching with her right upper extremity. *Id.*

Sanzone contends that these jobs require frequent reaching as defined in the DOT. R. Doc. 10 at 6 (citing DOT Selected Characteristics at 348 (office helper); 98 (merchandise marker); 343 (mail clerk)). Sanzone asserts that the VE's vague reference to her experience in this case was not a "reasonable explanation", as required by Social Security Ruling (SSR) 00-4p, and that the ALJ erred when he found that she was limited but could perform other jobs. *Id.*

The Commissioner contends that the ALJ applied the correct legal standards at Step Five of the Evaluation. R. Doc. 12 at 3. The Commissioner contends that Sanzone's claims have no merit and should be dismissed. *Id.* The Commissioner contends that the ALJ asked the VE about any possible conflict and the VE provided a reasonable explanation. *Id*. at 3-4.

In this matter, the ALJ determined that if Sanzone had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.1 and Rule 202.14. R. Doc. 9, Tr. 26, Finding 10. However, the ALJ found that Sanzone's ability to perform all or substantially all the requirements of this level of work has been impeded by additional limitations. *Id*. Therefore, to determine the extent that these limitations erode the unskilled light occupational base, the ALJ asked a VE whether jobs exist in the national economy for an individual with Sanzone's age, education, work experience, and residual functional capacity. *Id.*

The ALJ noted that according to the VE's testimony, Sanzone was able to work as an Officer Helper[1], Merchandise Marker[2], and Mail Clerk.[3] R. Doc. 9, Tr. 26, Finding 10. The VE testified that the jobs numbers represented a 70% reduction of the total job availability based on the limitation that Sanzone cannot stand or walk for more than 4 hours per 8-hour workday. *Id.*

The ALJ noted that the VE testified on matters not directly addressed in the D*ictionary Occupational Titles.* R. Doc. 9 at 31, Tr. 26, Finding 10. In so doing, the ALJ found that the VE's opinion that the availability of like work is reduced by 70% due to Sanzone's restrictions is based on her education, training, and experience. *Id.* The ALJ further found that the VE's testimony as to overhead reaching and employers' tolerance for task is based on the same. *Id.* Because the restrictions were based on the vocational expert's education, training, and experience, the ALJ

---

[1] The DOT defines an officer helper as a person who Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial). GOE: 07.07.03 STRENGTH: L GED: R2 M2 L2 SVP: 2 DLU: 81. *See* https://occupationalinfo.org/23/239567010.html

[2] According to the DOT, marker; price marker; ticket maker Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine [TICKETER (any industry); TICKET PRINTER AND TAGGER (garment)]. GOE: 05.09.03 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 77. *See* https://occupationalinfo.org/20/209587034.html

[3] According to the DOT, a Mail clerk's duties include sorts of incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according to type of mail handled as Mail Clerk, Bills (clerical). GOE: 07.05.04 STRENGTH: L GED: R3 M1 L2 SVP: 2 DLU: 87. *See* https://occupationalinfo.org/20/209687026.html

found that the testimony was accepted per SSR 00-4p. *Id.* The ALJ thereafter found that based on the VE testimony and residual functional capacity, Sanzone is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

Administrative adjudicators of social security disability claims utilize a five-step, sequential evaluation process. When a decision can be made at an early step, remaining steps are not considered. When—as here—a decision is reached only at the last step (Step Five), it means that the claimant established a prima facie case of disability, and the burden then shifted to the Commissioner to show that other work exists in the national economy that the claimant can perform despite his or her impairments. *See Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005) (citing *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)); *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

Among the sources of evidence that the Commissioner consults to determine when presumptively disabled claimants can perform alternative, available work are: (1) vocational experts; and (2) a United States Department of Labor publication titled the Dictionary of Occupational Titles ("DOT"). Vocational experts assess whether jobs exist for a person with the claimant's precise abilities. *See e.g., Gilliam v. Califano*, 620 F.2d 691, 694 n. 1 (8th Cir. 1980). They also assist in determining complex issues, such as whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (2005). In certain instances, courts even require that the Commissioner obtain expert vocational testimony or other similar evidence. *See Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985); *Dellolio v. Heckler*, 705 F.2d 123, 127–28 (5th Cir. 1983).

When using a Vocational Expert, Courts look to SSR 00-4p which provides specific guidance on the appropriate method by which an ALJ must consider vocational expert ("VE") testimony:

> "[B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: [1] Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and [2] Explain in the determination or decision how any conflict that has been identified was resolved."

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

At the hearing, the ALJ asked the VE if her testimony was consistent with the DOT and the VE responded, "yes sir." R. Doc. 9 at 62, Tr. 57. Notably, the VE reduced the numbers of jobs available when the ALJ presented a second hypothetical question in which the individual was limited to walking and standing for 4 hours of an 8-hour workday. *Id.* at 61-62, Tr. 56-57. The VE noted her reduction in numbers was based on her vocational experience. *Id.*

After the reduction, the VE testified:

> A. For the office helper, that's going to be 22,716. And then for the mail clerk, it's going to be 25,845. And then for the merchandise marker, it's going to be 65,664.
>
> Q. Very good. And is the evidence you've provided consistent with the DOT?
>
> A. Yes, sir. I believe -- and it's been a while. The reduction in numbers is based on my vocational experience. I think the reaching overhead that you had indicated, and as well as I think you did say something about, you know, a different extremity -- that's all based on my vocational experience. And the 5 percent off task, too, because it's not in the DOT.

R. Doc. 9, Tr. 57.

The SSA Policy Interpretation states that an ALJ may rely on a VE's "experience in job placement or career counseling" in resolving conflicts, but it also assumes that the VE will provide "more specific information about jobs or occupations than the DOT," not just a general statement

that their opinion is based on their education, experience, and training. *See* SSR 00-4P, 2000 WL 1898704. Here, no further explanation was elicited from the VE or otherwise provided in the ALJ's opinion. *See Yearby v. Comm'r, SSA*, No. 6:21-CV-00503-JDK, 2022 WL 4820460, at *4 (E.D. Tex. Sept. 9, 2022), *report and recommendation adopted*, No. 6:21-CV-00503-JDK, 2022 WL 4693911 (E.D. Tex. Sept. 29, 2022) (holding VE's claim that DOT "descriptions were consistent based on his own experience," without more, was insufficient to resolve apparent conflict between VE's testimony and DOT description); *Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching."); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93 (2d Cir. 2019) ("But while 'this Court could guess' what the three jobs Heller identified 'require in reality, it [was] the [Commissioner's] duty to elicit an explanation from [Heller] as to whether th[ose] occupations actually require ... overhead reaching.' ").

The ALJ did not inquire any further regarding whether these occupations would require Sanzone to engage in any of the use of her body that falls consistent with her limitations. There is no evidence in the record establishing that the ALJ took steps to resolve the apparent conflict between the VE's testimony and the DOT description. Therefore, the ALJ's reliance on the VE's claim that the DOT descriptions were consistent based on her experience renders the opinion not based on substantial evidence.

### IV. <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the ALJ's decision denying Cindy Branch Sanzone's claim for Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c) is **REVERSED AND REMANDED**.

New Orleans, Louisiana, this 5th day of February, 2025

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**